Territorial Law Library

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | ) CRIMINAL CASE NO. CF568-07 |
| | ) |
| vs. | ) DECISION AND ORDER |
| | ) (Defendant's Motion to Suppress) |
| TROY RYAN DAMIAN, | ) |
| Defendant. | ) |

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on October 15, 2008 and February 23, 2009, for a hearings on Troy Ryan Damian's ("Defendant") Motion to Suppress; and the Court placed the matter under advisement on May 29, 2009.. Attorney Richard S. Dirkx appeared on behalf of the Defendant. Attorney Susanne K. Horrigan appeared on behalf of the People of Guam ("the People"). Upon review of the evidence, oral and written arguments, and legal authorities presented by both attorneys, the Court hereby issues this Decision and Order.

## BACKGROUND

On December 18, 2007, an indictment was handed down in which Defendant was charged with the Burglary in violation o 9 G.C.A. §§ 37.20(a), 37.20(b) and 4.60, Assault in

The People of Guam vs. Troy Ryan Damian, CF568-07
Decision and Order – Motion to Suppress

Page 1 of 14

violation of 9 G.C.A. §§ 19.30(a)(3) and (e) and Criminal Trespass in violation of 9 G.C.A. §§ 37.30(a) and 4.60.

On September 23, 2008, Defendant filed a Motion to Suppress. The People filed an Opposition to Defendant's Motion to Suppress on October 15, 2008. On October 15, 2008, a motion hearing was held, and at this hearing testimony was taken by the victim Jon Tanuvasa ("Tanuvasa"). At the conclusion of the hearing the Court advised the Defendant and the People that the motion hearing would have to be continued. Jury selection and trial was vacated.

On February 23, 2009, a continued motion hearing was held, and at this hearing testimony was taken by Officer Atoigue, Officer Ananich, Marian Damian and Teresita Damian. The Defendant and the People requested to file further briefs and to schedule a hearing on March 16, 2009 for any further arguments to be made.

On March 11, 2009, Defendant filed a Supplemental Memorandum Concerning Suppression. On May 28, 2009, the People filed a Supplemental Memorandum in Opposition to the Defendant's Suppression Motion. The Court now addresses the Defendant's Motion to Suppress.

## DISCUSSION

Defendant argued that the People detained him in violation of local statutes, as well as, established principles of due process. Defendant's Motion to Suppress at 1 – 2 (September 23, 2008). "The Defendant bears the burden of proof when a search or seizure is conducted pursuant to a warrant; however, the people bear the burden of proof when a warrantless search or seizure occurs." People of Guam v. Santos, 1999 Guam 1 ¶51. According to 8 G.C.A. § 30.10, "[w]henever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person." However, such detentions are limited to 15 minutes,

and "shall not extend beyond the place where it was first effected of the immediate vicinity thereof." 8 G.C.A. § 30.30.

## I.    Defendant was not Arrested

A Fourth Amendment seizure occurs whenever an individual is physically or constructively detained by a police officer in such a manner that a reasonable person would not feel he is free to leave. County of Sacramento v. Lewis, 523 U.S. 833, 844, 118 S.Ct. 1708 (1998); Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694 (1985); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968). An arrest for Fourth Amendment purposes is a seizure. See Dunaway v. New York, 442 U.S. 200, 208, 99 S.Ct. 2248 (1979). A person is seized, arrested, or in custody "only when, by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870 (1980). Only when freedom of movement is restrained by authority – only when a seizure occurs – does the Fourth Amendment and the probable cause requirement apply. See Id. "An arrest is made by an actual restraint of the person, or submission to the custody of the person making the arrest. The person arrested may be subjected to such restraint as is reasonable for his arrest and detention." 8 G.C.A. § 20.10. "The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." Cortez v. McCauley, 478 F.3d 1108, 1115 – 1116 (10th Cir. 2007).

An arrest may also occur despite the police having formally arrested the person or despite there being no physical restraint. People of Guam v. Cundiff, 2006 Guam 12 ¶21. "'A person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident a reasonable person would have believed that he was not free to leave'" Id. (quoting Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870).

The Fourth Amendment does not prevent a person from agreeing to accompany officers to the police station and remain there for interrogation. See In re Gilbert R., 25 Cal.App.4th 1121, 1126, Cal.Rptr.2d 676 (Cal. App. 1994) (no seizure where minor agreed to go to station for questioning). A person may consent to move to a different location for investigative purposes. See United States v. Garcia-Torres, 1 Fed.Appx. 294 (6th Cir. 2001) (holding that the defendant voluntarily consented to move from the initial investigative detention to a different location for further investigative purposes). The people must show, by a preponderance of the evidence through "clear and positive testimony," that any such consent was "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." United States v. Worley, 193 F.3d 380, 384 – 386 (6th Cir. 1999).

"The test for custody is an objective one: whether a reasonable person in [the same] position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." United States v. Newton, 369 F.3d 659, 671 (2d Cir. 2004). Defendant failed to provide evidence to meet this test. There is no evidence of compulsion or curtailment of liberty. The fact that officers may have had probable cause to arrest Defendant does not alter the analysis. Id. Because Defendant was free to refuse to accompany the police to the Agat Precinct; there is nothing to support Defendant's argument that he was arrested at his home. See Newton, 369 F.3d at 672 (noting that there is no Fourth Amendment "seizure" unless a reasonable person in the same circumstances would have believed he was not free to leave).

The Court concludes that Officer Atoigue requested Defendant accompany him to the Agat Precinct, and Defendant decided to accompany Officer Atoigue to the Agat Precinct. Motion Hearing at 2:29 p.m. (February 23, 2009). While at the Defendant's home, Officer Atoigue informed Defendant that he was under investigation for a burglary and assault

complaint. Id. Officer Atoigue asked Defendant if he would accompany him to the Agat Precinct for an interview. Id. Defendant agreed. Id. Defendant followed the Police. Id. at 4:05 p.m. According to Marian Damian, police officers never touched Defendant at his home. Id. at 4:06 p.m. Defendant was never placed in handcuffs. Id. at 2:55 p.m. According to Teresita Damian, officers informed her that Defendant was only being taken to the Agat Precinct for questioning. Id. 4:30 p.m. A reasonable person would not have believed that Defendant was neither free to leave. Therefore, Defendant was not arrested within the meaning of the Fourth Amendment when he agreed to accompany Officer Atoigue to the Agat Precinct.

## II.    Probable Cause

Despite the Court determined that Defendant was not arrested, the Court will nevertheless decide whether there was probable cause to support an arrest. The Fourth Amendment prohibits unreasonable seizures by the Government. The United States Supreme Court imposes a presumptive warrant requirement for searches and seizures, and generally requires probable cause for a warrantless search or seizure to be reasonable. See United States v. Watson, 423 U.S. 411, 96 S.Ct. 820 (1976) (warrantless arrests based on probable cause are reasonable under the Fourth Amendment). "A warrantless arrest is valid if it is supported by probable cause." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989), cert. denied, 498 U.S. 825 (1990). The Fourth Amendment is not offended by a warrantless arrest when the officer has probable cause to believe a crime has been committed and that the suspect committed the crime. Watson, 423 U.S. at 417, 96 S.Ct. 820.

"Probable Cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067,

1072 (9th Cir. 2007) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). "Courts look to the totality of the circumstances known to the officers" in determining whether there is probable cause for an arrest. <u>United States v. Del Vizo</u>, 918 F.2d 821, 825 (9th Cir. 1990). "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" <u>Id</u>. (quoting <u>McKenzie v. Lamb</u>, 738 F.2d 1005, 1008 (9th Cir. 1984)). Under the collective doctrine, in determining whether probable cause exists for arrest, we look to "the collective knowledge of all the officers involved in the criminal investigation." <u>United States v. Ramirez</u>, 473 F.3d 1026, 1032 (9th Cir. 2007).

In accessing the totality of the circumstances, to determine whether probable cause existed prior to a warrantless arrest, the United States Supreme Court has instructed that "if an unquestionably honest citizen comes forward with a report of criminal activity – which if fabricated would subject him to criminal liability – we have found rigorous scrutiny on the basis of his knowledge unnecessary." <u>Illinois v. Gates</u>, 462 U.S. 213, 233 – 234, 103 S.Ct. 2317 (1983).

Defendant asserts that the facts known to the arresting officers were insufficient to demonstrate probable cause to support the arrest. <u>Defendant's Supplemental Memorandum</u> at 6 (March 11, 2009). On December 2, 2007, at around 10:30 p.m., Tanuvasa discovered that three individuals were breaking into his three family vehicles located at his home. <u>Motion Hearing</u> at 2:18 p.m. (October 15, 2008). Tanuvasa confronted the three individuals, and the three individuals ran to a white four-door Corolla ("Corolla"). <u>Id</u>. at 2:20 p.m.; <u>Motion Hearing</u> at 3:35 p.m. (February 23, 2009). Tanuvasa pursued the three individuals to the Corolla. <u>Motion Hearing</u> at 2:21 p.m. (October 15, 2008); <u>Motion Hearing</u> at 3:35 p.m. (February 23, 2009). Tanuvasa

wedged himself in between the driver-side car door and the car making it difficult for the driver to close the door. Id. Tanuvasa saw the driver's face. Id. at 2:20 p.m.

Tanuvasa immediately called the police and the police arrived at the alleged crime scene. Tanuvasa provided the police a description of the vehicle present at the alleged crime scene to the police. Tanuvasa stated that a Corolla was present at the alleged crime scene, and the alleged perpetrators fled in a Corolla. Motion Hearing at 2:20-2:21 p.m. (October 15, 2008); Motion Hearing at 2:26 (February 23, 2009). Tanuvasa also provide the police with a license plate number of the Corolla. Motion Hearing at 2:30 p.m. (October 15, 2008); Motion Hearing at 2:26 (February 23, 2009); Id. at 3:35 p.m.

Tanuvasa looked at the driver for approximately a minute. Motion Hearing at 2:35 p.m. (October 15, 2009). Tanuvasa also provided the police with a description of the individual driving the Corolla as being "heavy set" and "light complected." Motion Hearing at 2:58 p.m. (February 23, 2009); Id. at 3:35 p.m.; Id. at 3:48 p.m. The "mere resemblance to a general description is not enough to establish probable cause." Lopez, 482 F.3d , 1073 (quoting Grant v. City of Long Beach, 315 F.3d 1081, 1088 (9th Cir. 2002). In United States v. Ricardo D., the court held that the fact the defendant matched descriptions of the crime suspect as a "young, thin man, not too tall" and a "young, Mexican male" were insufficient to create probable cause. 912 F.2d 337, 342 (9th Cir. 1990). Tanuvasa's description of the suspect as being "heavy set" and "light complected" is insufficient on its own to create probable cause to arrest Defendant. However, the police did not solely rely on Tanuvasa's description of the driver of the Corolla.

Tanuvasa immediately reported these facts to the police. In accessing the totality of the circumstances, the Court determines that probable cause to arrest existed because the officers had knowledge or reasonably trustworthy information sufficient to lead a person of reasonable

caution to believe that an offense has been or is being committed by the person being arrested. See Lopez, 482 F.3d at 1072.

Tanuvasa provided the police with a description of the vehicle at the scene of the alleged crime – a Corolla. Tanuvasa provided the police with a license plate number. Tanuvasa provided the police with a description of the driver of the Corolla. Tanuvasa provided a description of the driver of the Corolla as "light colored" and "heavy set" individual. Motion Hearing at 2:58 p.m.

Upon further investigation, Officer Atoigue was able to determine the address and the registered owner of the Corolla. Motion Hearing at 2:29 p.m. (February 23, 2009). Officer Atoigue arrived at the address and determined the Corolla was present. Id. Officer Atoigue placed his hand on the hood of the Corolla and found it was warm – indicating that it had been recently used. Id. at 2:57 p.m. He then knocked on the door and Marian Damian answered the door. Id. Officer Atoigue asked her if she owned the Corolla and she stated yes. Id.; Id. at 3:59 p.m.; Id. at 4:25 p.m. Officer Atoigue then asked Marian Damian 'who last operated the vehicle?' Id. at 2:57 p.m. She responded that Defendant last operated the Corolla. Id.; Id. at 3:59 p.m.; Id. at 4:25 p.m. After Defendant was brought to the Agat Precinct, Officer Atoigue observed that Defendant had fresh scratches on his body – indicating that Defendant was involved in an altercation. Id. at 2:34 p.m. Therefore, the Court determines that the police had probable cause to arrest Defendant.

III.    **Consent to Enter Home**

Defendant argued that even if the police had probable cause to make an arrest, the arrest of the Defendant was still illegal. Defendant's Supplemental Memorandum at 7 (March 11, 2009). Defendant argued that his arrest was a result of a warrantless entry into his home. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a

warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371 (1980). The presumption of unconstitutionality that accompanies "the [warrantless] entry into a home to conduct a search or make an arrest" may be overcome only by showing "consent or exigent circumstances." Steagald v. United States, 451 U.S. 204, 211, 101 S.Ct. 1642 (1981). Law enforcement officers may not enter a person's home without a warrant or consent, even if there is probable cause to make an arrest. Payton, 445 U.S. at 602 – 603, 100 S.Ct. 1371.

In light of the above, the People must demonstrate that exigent circumstances existed at the time the arrest was made in Defendant's home. Id. at 586, 100 S.Ct. 1371 (The burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.). If there are no exigent circumstances, officer must present evidence showing that Defendant consented to the entry. See Lopez-Rodriguez v. Mukasey, 536 F.3d 1012, 1016 (9th Cir. 2008) (stating that officers have the burden of showing that the resident gave legally sufficient consent).

The People make no claim of exigent circumstances. Thus, in order to overcome the presumption of unconstitutionality attaching to the officers' entry, the People must show that there was legally sufficient consent. See Steagald, 451 U.S. at 211, 101 S.Ct. 1642; Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793 (1990); United States v. Atlock, 415 U.S. 164, 169 – 171, 94 S.Ct. 988 (1974). Consent to enter the home is valid if "there was no duress or coercion" and consent is unequivocal and specific" and "freely and intelligently given." United States v. Shaibu, 920 F.2d 1423, 1426 (9th Cir. 1990). Third party consent is effective if the third party was the owner of the home . U.S. v. Harrison, 9 F.3d 1554 (9th Cir. 1993) (grandmother, as owner of the home, had common authority to give effective consent to its search).

After investigating the license plate number provided by Tanuvasa, Officer Atoigue discovered the registered owner – Marian Damian and address of the Corolla. Motion Hearing at 2:26 p.m. (February 23, 2009). The registered owner of the Corolla was a resident of Tamuning. Officer Atoigue relayed the information about the incident, the registered owner of the Corolla and address of the owner of the Corolla to the Tamuning Precinct Supervisor. Id. at 2:27 p.m.

At approximately 1:45 a.m., Officer Atoigue, along with other officers, then proceeded to go to the address provided on the registration. Id. at 2:28 p.m. Upon arrival, Officer Atoigue identified the vehicle as being the Corolla and matched the license plate number provided by Tanuvasa. Id. Officer Atoigue touched the hood of the Corolla to see if the engine was still warm – which it was – in order to determine if the Corolla was recently used. Id.

Officer Atoigue then knocked on the front door of the address, and a female individual answered the door – Marian Damian. Id. at 2:29 p.m.; Id. at 3:14 p.m. Marian Damian is Defendant's grandmother. Id. at 4:08 p.m. Officer Atoigue asked her if she owned the Corolla and she stated yes. Id. at 2:29 p.m. Officer Atoigue then asked Marian Damian 'who last operated the vehicle?' Id. She responded that Defendant last operated the Corolla. Id. Officer Atoigue then asked if Defendant was home and she stated yes. Officer Atoigue then asked permission to enter the home, and Marian Damian gave permission to enter the home. Id. Officer Atoigue then entered the home and met the Defendant in the living room. Id. According to Teresita Damian, she believed Marian Damian allowed police to enter the home. Id. at 4:26 p.m.

Officer Atoigue identified Defendant as Troy Damian through his identification. Id. at 2:29 p.m. He then informed Defendant that he was under investigation for a burglary and assault complaint. Id. Officer Atoigue then asked Defendant if he would accompany him to the Agat Precinct for an interview. Id. Defendant agreed. Id. The Court determines that Marian Damian

gave consent for Officer Atoigue to enter Defendant's residence. Furthermore, the Court determines that no arrest was made in Defendant's home. Defendant agreed to accompany Officer Atoigue to the Agat Precinct while inside Defendant's his home. Therefore, there was no violation of Defendant's Fourth Amendment Rights while Officer Atoigue was inside Defendant's home.

## IV.    Out-of-Court Identification

Defendant argued that the out-of court identification was so suggestive that it taints the in-court identification. Defendant's Supplemental Memorandum at 9 (March 11, 2009). The due process clause of the Fourteenth Amendment provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. A corresponding provision in the Organic Act provides the same protections. See 48 U.S.C. § 1421b(e). When determining whether an identification procedure violates a defendant's due process rights, a court must consider "whether under the totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct 375 (1972). The Court finds that out-of-court identification was not unnecessarily suggestive, and thus, an analysis of reliability of the out-of-court identification is unnecessary. Therefore, the Court will deny Defendant's Motion to Suppress.

Defendant argued that Tanuvasa's identification was suggestive. An identification is suggestive where it "[i]n effect . . . sa[ys] to the witness 'This is the man.'" Foster v. California, 394 U.S. 440, 443, 89 S.Ct. 1127 (1969). One-on-one identifications are suggestive. See Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708 (1987). However, "the admission of evidence of a showup without more does not violate due process." Neil, 409 U.S. at 198, 93 S.Ct 375. A

suggestive identification violates due process if it was unnecessary or "gratuitous" under the circumstances. Id.

One-on-one identifications are necessary because of officers' and suspects' strong interest in the expeditious release of innocent persons and the reliability of identifications made soon after and near a crime. See, e.g., United States v. Kessler, 692 F.2d 584, 585 (9th Cir. 1982); United States v. Coades, 549 F.2d 1303, 1305 (9th Cir. 1977). In the instant case, the Defendant was apprehended approximately two hours after the incident occurred. Motion Hearing at 2:29 p.m. (February 23, 2009). Defendant was located using the information supplied by the victim Tanuvasa – the license plate number, the car description, and the description of the driver. The one-on-one identification took place within three hours of the alleged burglary and assault. Id. Tanuvasa's one-on-one identification of the Defendant took place the outside the Agat Precinct. The Court determines that Tanuvasa's one-on-one identification was necessary for the following reasons: (1) Defendant was found approximately two hours after the alleged crime took place (alleged crime occurred at 10:30 p.m., and Defendant was located at 1:45 a.m.), (2) Tanuvasa's one-on-one identification of Defendant took place within four hours after the alleged crimes were perpetrated (Tanuvasa identified Defendant at 2:28 a.m.) and (3) Defendant's apprehension was a result of Tanuvasa's information supplied to the police – more particularly the license plate number of the Corolla. Therefore, the Court will deny Defendant's Motion to Suppress.

In addition, the procedure used by the police was not especially likely to yield an "irreparable misidentification." Manson v. Brathwaite, 422 U.S. 98, 116, 97 S.Ct. 2243 (1977); Kessler, 692 F.2d at 586-587 (unless the procedure used is so suggestive that it raises a "very substantial likelihood of irreparable misidentification," doubts go to the weight, not the

admissibility, of the evidence). The Ninth Circuit Court of Appeals has held that similar curbside identifications, and some even more suggestive, did not raise a substantial likelihood of irreparable misidentification. Id. at 585 (handcuffed suspect was surrounded by police officers); United States v. Jones, 84 F.3d 1206, 1209 (9th Cir. 1996) (suspect was the only civilian on the scene and was surrounded by police officers holding up mask and disguise worn by perpetrator); United States v. Bagley, 772 F.2d 482, 492 (9th Cir. 1986) (suspect was seated in the police car, handcuffed, and surrounded by police).

Officer Ananich asked Tanuvasa to come down to the Agat Precinct to identify the Defendant – which Tanuvasa agreed. Motion Hearing at 3:37 p.m. In fact, Officer Atoigue asked Defendant whether he was willing to have Tanuvasa look at him to identify the Defendant – which Defendant responded that it was no problem. Id. at 2:34 p.m.; Id. at 3:05 p.m.; Id. at 3:38 p.m. Officer Atoigue brought Defendant brought to the back of the Agat Precinct. Id. at 2:35 p.m. (February 23, 2009). Defendant was positioned in a doorway. Id. Tanuvasa was positioned 15 – 25 feet away from Defendant. Id. at 3:39 p.m. Officer Ananich was able to see Defendant's face. Id. 3:40 p.m. Tanuvasa instantly identified Defendant as the one of the assailants. Id. at 3:39 p.m. Officer Atoigue then informed Defendant that Tanuvasa had identified him as one of the assailants; and it was then that Defendant was placed under arrest. Id. at 2:36 p.m.; Id. at 3:04 p.m.

The Defendant has not specifically pointed to any police conduct during the one-on-one identification that was unnecessarily suggestive in order for Tanuvasa to identify Defendant as the male individual that perpetrated the burglary and assault. Therefore, the Court will deny the Defendant's Motion to Suppress the Out-of-Court Identification.

There is no constitutional right to a lineup. United States v. Robertson, 606 F.2d 853, 857 (9th Cir. 1979); see also Summer v. Mata, 446 U.S. 1302, 1305-1306, 100 S.Ct. 1630 (1980) (staying the Ninth Circuit's decision that the availability of "less suggestive procedure" warranted granting habeas petition, and finding this court's analysis to be in tension with the Supreme Court's decision in Manson and contrary to precedent from other circuits). Therefore, the Court will deny Defendant's Motion to Suppress.

The due process clause only bars admission of unreliable identifications that were obtained by unnecessarily suggestive identification procedures. Moore v. Illinois, 434 U.S. 220, 227, 98 S.Ct. 458 (1977); Neil, 409 U.S. at 200, 93 S.Ct. 375. No Supreme Court case requires a court to exclude identification evidence solely because it is unreliable; unless the identification procedure was unnecessarily suggestive, reliability is for the jury to consider. The Court determines that the out-of-court identification was not unnecessarily suggestive. See, e.g., Stovall, 388 U.S. at 302, 87 S.Ct. 1967 (upholding admission of an identification because the suggestive procedure was necessary, without considering indicia of reliability). Therefore, the Court denies Defendant's Motion to Suppress.

## CONCLUSION

By preponderance of the evidence and based on the foregoing reasons, the Court DENIES Defendant's Motion to Suppress.

This matter is set for trial setting for August 31, 2009 at 10:00 a.m.

**SO ORDERED** this ___14___ day of ___Aug___, 2009.

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court, Guam

Dated at Agana, Guam

AUG 14 2009

Jacqueline S. C. Terlaje

Deputy Clerk, Superior Court of Guam

HONORABLE ANITA A. SUKOLA
Judge, Superior Court of Guam